IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 16-23753-JAD |
| | ) | |
| LAWRENCE W. MODENA, SR., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | X | |
| | ) | |
| MAURICE A. NERNBERG & ASSOCIATES, | ) | Adversary No. 17-2012-JAD |
| | ) | |
| | ) | Related to Doc. No. 41 |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| LAWRENCE W. MODENA, SR., | ) | |
| | ) | |
| Defendant. | ) | |
| | X | |

**MEMORANDUM OPINION**

The matter before the Court is Plaintiff's *Motion for Summary Judgment* ("MFSJ"). Maurice A. Nernberg & Associates ("Plaintiff") commenced the above-captioned adversary proceeding by filing its *Adversarial Claim for Fraud Against Petitioner Lawrence W. Modena, Sr. Pursuant to 11 USCS 523(a)(2)*("Complaint") against Debtor, Lawrence W. Modena, Sr. Pursuant to the Complaint, Plaintiff seeks a determination of non-dischargeability under 11 U.S.C. §523(a)(2) for legal fees allegedly owed by Debtor to Plaintiff. Plaintiff additionally seeks a finding of non-dischargeability under 11 U.S.C. §523(a)(6).

For the reasons set forth below, the Court finds that Plaintiff has failed to meet its burden of showing an absence of genuine issue of material fact that the alleged debt for legal fees is valid against Debtor. Accordingly, the *Motion for Summary Judgment* is denied.

## I.
## Factual & Procedural History

The Court notes that it writes primarily for the parties to the *Motion for Summary Judgment* and sets forth below only those facts necessary for resolution of the motion.

This dispute concerns legal fees allegedly owed by Debtor to Plaintiff. Plaintiff avers that an attorney-client relationship was created between Plaintiff and Debtor by execution of a fee agreement in 1988. See *Concise Statement of Material Facts* ("Concise Statement") ¶1, ECF No. 42. Debtor denies this assertion and avers that the attorney-client relationship was formed not between Plaintiff and Debtor, individually, but between Plaintiff and Lanmark, Inc. ("Lanmark"). See *Response to Plaintiff's Concise Statement of Material Facts* ("Response to Concise Statement") ¶1, ECF No. 51. Debtor served as president of Lanmark. See Oral Argument on MFSJ ("Oral Argument") at 12:01 p.m., *Sworn Declaration of Lawrence W. Modena, Sr.* ("Modena Declaration") ¶7, ECF No. 49. The 1988 Fee Agreement (the "1988 Fee Agreement"), attached as Exhibit "A" to Plaintiff's Concise Statement, was issued by Plaintiff's predecessor, Nernberg & Laffey, and addressed to "Mr. Lawrence W. Modena c/o LANMARK, INC." The

2

1988 Fee Agreement was signed by Debtor on July 11, 1988, with the title "President" inscribed immediately below Debtor's name.

Lanmark provided construction services for several school districts and in 1998 became involved in a legal dispute with Kiski Area School District ("Kiski"). There is no dispute that Plaintiff initially represented Lanmark in its legal case with Kiski pursuant to the 1988 Fee Agreement. See Concise Statement ¶4, Resp. to Concise Statement ¶4.

In April 2001, a contingency fee agreement (the "2001 Contingency Fee Agreement," and together with the 1988 Fee Agreement, the "Fee Agreements") was entered into relative to the Kiski litigation. However, the identities of the parties to the 2001 Contingency Fee Agreement are subject of dispute. Plaintiff avers that Debtor, individually, entered into the agreement, whereas Debtor asserts that the 2001 Contingency Fee Agreement was between Plaintiff and Lanmark only. See Concise Statement ¶7, Resp. to Concise Statement ¶7. The 2001 Contingency Fee Agreement was sent by Plaintiff to "Lanmark, Inc./LARRY MODENA" and was signed on April 24, 2001, as follows:

> ACCEPTED:
>
> by Lawrence W. Modena Sr.
> LANMARK CONSTRUCTION, INC.

See Concise Statement, Ex. H.

Plaintiff asserts that the 2001 Contingency Fee Agreement incorporates the 1988 Fee Agreement. See Concise Statement ¶8. Debtor disagrees, averring that the 2001 Contingency Fee Agreement replaced the 1988 Fee Agreement. See

3

Resp. to Concise Statement ¶8. Regardless, Debtor maintains that he, individually, was not a party to either of the Fee Agreements. Instead, that the Fee Agreements were between Plaintiff and Lanmark.

Plaintiff asserts that a settlement of the Kiski litigation was reached on July 12, 2001, in the amount of $430,000 payable by Kiski. See Concise Statement ¶13, Oral Argument at 12:04 p.m. Debtor disputes that an enforceable settlement was effected at that time, arguing instead that no enforceable settlement was reached in the Kiski litigation until after Plaintiff withdrew its representation of Lanmark at an August 29, 2001 hearing before the Honorable Gary P. Caruso in the Court of Common Pleas of Westmoreland County, Pennsylvania. See Resp. to Concise Statement ¶13.

Despite Debtor's overtures that no enforceable settlement had been reached, on July 16, 2001, Debtor caused a letter to be sent to opposing counsel in the Kiski litigation which read in part: "We are requesting that the settlement check for the above-mentioned project be made out to Lanmark, Inc. only and that it be sent to our office or we will pick it up at the School once it is ready." See Concise Statement, Ex. J, p. 62 (the "July 16th Letter"). The July 16th Letter was issued on Lanmark letterhead and signed by Debtor with the title of "President." Debtor does not dispute that he contacted opposing counsel regarding the settlement check, but denies Plaintiff's accusations that communications between opposing counsel and Debtor were conducted in secret and/or for the purpose of avoiding paying Plaintiff. See Resp. to Concise Statement ¶¶ 14, 15. Debtor avers that although he directed that the settlement

4

check be issued directly to Lanmark, Lanmark intended to pay Plaintiff its fees. See Modena Declaration ¶21.

After a dispute arose over the release of a surety in the Kiski litigation, Plaintiff filed a Motion to Enforce Settlement and for Sanctions on behalf of Lanmark and a hearing was held before Judge Caruso on August 29, 2001. See Amended Ex. FF, ECF No. 53. During the course of the hearing, Brian Kuhn, Esq., an attorney formerly employed by Plaintiff, notified the court that during a recess in argument of the motion to enforce he discovered that Kiski and Lanmark had independently entered into a release, that a settlement check was brought to the hearing made payable to Lanmark, and that Mr. Kuhn was directed to perform no further work on the case. See Amended Exhibit FF 14-16. Debtor does not dispute that on that day Debtor signed a release[1] in the Kiski litigation and took possession of a settlement check in the amount of $430,000. See Concise Statement ¶18, Resp. to Concise Statement ¶18. However, Debtor asserts that his execution of the release was made on behalf of Lanmark and not on behalf of himself, individually. See *Answer and Affirmative Defenses* ¶24, ECF No. 16.  The settlement check was made payable to "LANMARK, INC." See

---

[1] In Plaintiff's Concise Statement, Plaintiff references Exhibit HH as the "Signed Settlement Agreement." However, the copy of the document submitted as Exhibit HH, titled "Settlement Agreement and Mutual Release of Claims," is not executed. The Court does note that only the odd numbered pages of the document have been included in the exhibit. The Court is unsure of whether the omission of the even numbered pages was intentional or not, but further notes that several other of Plaintiff's exhibits also omit even numbered pages. See Amended Ex. FF, 1-4; Concise Statement, Ex. B. Although unsigned, Debtor does not contest Plaintiff's averment stating that Debtor signed the release and which references Ex. HH.  The Court observes that the blank signature line on the document reserved for Debtor's signature is under the heading "LANMARK, INC." and includes the title "President."

Concise Statement, Ex. GG. No payment was made to Plaintiff relative to the settlement amount. Debtor avers that Plaintiff terminated its representation of Lanmark prior to an enforceable settlement agreement being reached and therefore is not entitled to funds under the 2001 Contingency Fee Agreement. See *Brief in Opposition to Motion for Summary Judgment* ("Brief in Opposition") 5, ECF No. 52.

Plaintiff commenced state court proceedings against Debtor and Lanmark in the Court of Common Pleas of Allegheny County, Pennsylvania, asserting claims for breach of contract, fraud, and unjust enrichment. See Complaint, Ex. C.

Prior to resolution of the state court litigation, on October 5, 2016, Debtor filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code. See *Voluntary Petition for Individuals Filing for Bankruptcy*, 16-23753-JAD, ECF No. 1; Complaint, Ex. A. Debtor listed Plaintiff on his *Schedule E/F: Creditors Who Have Unsecured Claims* ("Schedule E/F") as having a contingent, unliquidated, disputed, business debt in the amount of $225,000. See Schedule E/F, 16-23753-JAD, ECF No. 17. For its part, Plaintiff filed a Proof of Claim, docketed on the claims register as Claim No. 1, asserting an unsecured claim in the amount of $236,295.21. See Complaint, Ex. B.

Plaintiff commenced the within adversary proceeding by filing its Complaint on January 13, 2017, seeking a determination that the debt owed to Plaintiff is non-dischargeable under 11 U.S.C. §523(a)(2) on account of Debtor's alleged actual fraud, false pretenses, and false representations in procuring

6

services. In its Complaint, Plaintiff asserts that damages should be determined under the 1988 Fee Agreement at $201,761.35. Alternatively, damages should be assessed under the 2001 Contingency Fee Agreement at $129,000. See Complaint ¶¶26, 28.

On September 25, 2017, Plaintiff filed its *Motion for Summary Judgment*, along with its *Brief in Support of Motion for Summary Judgment* ("Brief in Support"), ECF No. 43, and Concise Statement. Debtor filed its responses to the *Motion for Summary Judgment* and Concise Statement, along with its Brief in Opposition on October 26, 2017. See ECF Nos. 50-52.

A hearing on the *Motion for Summary Judgment* was held on November 7, 2017. At the hearing, counsel for Plaintiff clarified that Plaintiff was seeking a determination of non-dischargeability under 11 U.S.C. §523(a)(2) for false pretenses and actual fraud, as well as a claim under §523(a)(6) for conversion.[2] See Oral Argument at 12:00 p.m.

## II.
## Summary Judgment Standard

Fed. R. Civ. P. 56, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056, provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[2] Prior to the November 7, 2017 hearing, Plaintiff had not identified 11 U.S.C. §523(a)(6) as a section of the Bankruptcy Code under which it sought relief. Neither Plaintiff's Complaint nor summary judgment pleadings make reference to §523(a)(6) or identify the elements necessary for relief thereunder. The Court does note, however, that in setting forth its claim under §523(a)(2), Plaintiff describes Debtor's conduct as ". . . outrageous, **malicious**, wanton intentional and **willful** . . ." (Complaint ¶26 (emphasis added)) and asserts damages on account of Debtor's "fraud and conversion." See *Plaintiff's Damage Disclosure*, ECF No. 40. Regardless, as Debtor did not object to Plaintiff's assertion of a claim under §523(a)(6), the Court will make no finding as to whether §523(a)(6) had been properly raised.

7

fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

As recently articulated by the Honorable Kim R. Gibson of the United States District Court for the Western District of Pennsylvania in Hadeed v. Advanced Vascular Res. of Johnstown, LLC:

> "Summary judgment is appropriate only where ... there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Melrose, Inc. v. Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010) (quoting Ruehl v. Viacom, Inc., 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. Anderson, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.' " Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).
>
> The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable

> jury to find for the nonmovant." <u>Coolspring Stone Supply v. Am. States Life Ins. Co.</u>, 10 F.3d 144, 148 (3d Cir. 1993); see also <u>Podobnik v. U.S. Postal Serv.</u>, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

<u>Hadeed v. Advanced Vascular Res. of Johnstown, LLC</u>, No. 3:15-CV-22, 2017 WL 4998663, at *4 (W.D. Pa. Oct. 30, 2017).

### III.

**a.    Existence of a "Debt" Enforceable Against Debtor**

Plaintiff seeks a determination of non-dischargeability of a debt under 11 U.S.C. §523(a)(2) and/or (a)(6). Section 523(a)(2) provides that a debtor will not receive a discharge for any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" Under §523(a)(6), a debtor will be denied a discharge of a debt determined to be the result of debtor's "willful and malicious" actions. <u>See</u> 11 U.S.C. §523(a)(6).

Prior to engaging in a detailed analysis of whether Debtor's actions rise to the level of fraudulent and/or "willful and malicious" conduct, it must be shown that there exists a debt resultant from the alleged behavior. <u>See</u> 11 U.S.C. §523(a)("A discharge . . . does not discharge an individual debtor from any *debt*. . . ." (italics added)). After all, any analysis of whether Plaintiff has satisfied its burden as to the elements of §523(a)(2) and/or (a)(6) would be an exercise in futility if there is no debt to be excepted from discharge.

9

In this matter, Plaintiff alleges that Debtor is indebted to Plaintiff relative to Debtor's non-payment of legal fees arising from Plaintiff's representation of Lanmark in the Kiski litigation. In short, Plaintiff avers that Debtor, in his individual capacity, entered into the 1988 Fee Agreement and—with fraudulent intent—the 2001 Contingency Fee Agreement, and was the obligor under those agreements. Further, it is averred that after entering into the 2001 Contingency Fee Agreement Debtor converted the funds owed to Plaintiff by orchestrating the payment of the settlement funds directly to Lanmark and subsequently expending those funds.

In response, Debtor contends that there is no debt owed to Plaintiff by Debtor and thus, there is nothing to be excepted from discharge. Debtor's arguments are two-fold. First, that Plaintiff terminated its employment prior to the finalization of the settlement agreement and therefore Plaintiff was not entitled to any portion of the settlement funds. Second, that even if a debt is owed to Plaintiff, that the debt is owed by Lanmark and not Debtor, individually.

Beginning with the latter argument, Debtor avers that his actions forming the basis of Plaintiff's claims of §523(a) liability were taken on behalf of Lanmark in Debtor's capacity as president of the corporation. Thus, Debtor argues that in the event a debt is found owing to Plaintiff, it is Lanmark who is ultimately responsible for such debt. Debtor cites no legal authority in support of his position, but Debtor's arguments are in line with the general proposition that a third-party cannot hold a corporate agent individually liable for the obligations of the corporation. See Lichtenstein v. Anderson (In re Eastern Continuous

Forms, Inc.), 302 B.R. 320, 343 (Bankr. E.D.Pa. 2003)("It is a well established general rule that one who deals with a corporation, knowing it to be such, cannot enforce individual liability against the officers or agents who act for the corporation.") See also Daniel Adams Assocs., Inc. v. Rimbach Publ'g, Inc., 519 A.2d 997, 1000-1001 (Pa.Super.Ct. 1987)("Where a party contracts with a corporation through a corporate agent who acts within the scope of his authority and reveals his principal, the corporate principal alone is liable for breach of the contract.") Moreover, Debtor avers that Plaintiff has failed to assert a case for piercing of the corporate veil and therefore, cannot assess individual liability on Debtor.

In response to Debtor's arguments, counsel for Plaintiff stated on the record at the hearing that: "With regard to piercing the corporate veil we're alleging conversion and fraud it's—it's on the individual it's not about the company. We're alleging Mr. Modena purposefully converted the funds. . . ." Oral Argument at 12:26 p.m. The Court finds this statement ambiguous as to whether Plaintiff is asserting: (1) that as the averred contracting party and obligor, Debtor was acting in his individual capacity, or (2) that regardless of whether Debtor was acting as a corporate agent, that liability for fraud and conversion may be assessed against the individual actor. If the latter, for reasons more specifically addressed below, the Court finds that the legal theory supporting such position has not be sufficiently articulated to merit consideration in resolving the *Motion for Summary Judgment*. Accordingly, the Court will evaluate the question of whether there is any genuine issue of material fact that a debt is owed by Debtor

individually based on Plaintiff's averments that Debtor was the contracting party under the Fee Agreements.

### i. Existence of a Debt Under 11 U.S.C. §523(a)(2)

Turning first to the Plaintiff's allegations under 11 U.S.C. §523(a)(2), the Bankruptcy Code provides that a debtor will not receive a discharge for "any debt—(2) for money, property, services . . . obtained by—(A) false pretenses, a false representation, or actual fraud . . . ." Plaintiff alleges under §523(a)(2) that Debtor, in his individual capacity, entered into the 2001 Contingency Fee Agreement with no intention of honoring the agreement. Consequently, it is alleged that the fee for legal services owed pursuant to the 2001 Contingency Fee Agreement is non-dischargeable. Alternatively, Plaintiff argues that the debt for legal services is owed under the 1988 Fee Agreement entered into by Debtor individually and incorporated into the 2001 Contingency Fee Agreement. Thus, Plaintiff contends that a contractual debt is owed by Debtor to Plaintiff.

Debtor disagrees. Debtor argues that he, individually, was not a party to either of the Fee Agreements, but instead executed the Fee Agreements as an agent of Lanmark. See Modena Declaration ¶5. Thus, the contractual debt, if any, is owed by Lanmark alone.

In resolving the question of whether there is any genuine issue of material fact that any debt for legal services under the Fee Agreements is owed by Debtor, the Court need not delve too far into the record of the case. Beginning with the Fee Agreements themselves, the Court observes that the 1988 Fee Agreement issued by Plaintiff was addressed to "Mr. Lawrence W. Modena c/o LANMARK,

12

INC." Aside from the signature of Plaintiff, the only other signatory to the 1988 Fee Agreement was Lawrence W. Modena, who also hand-wrote the title "President" in his signature block to read as follows:

> CONSENTED TO:
>
> <u>Lawrence W. Modena</u>
> President   7/11/88

The 2001 Contingency Fee Agreement was issued by Plaintiff to "Lanmark, Inc./LARRY MODENA." Like the 1988 Fee Agreement, aside from Plaintiff, the 2001 Contingency Fee Agreement was executed only by Debtor as follows:

> ACCEPTED:
>
> by <u>Lawrence W. Modena, Sr.</u>
> LANMARK CONSTRUCTION, INC.

Looking at the face of the documents, Debtor executed both Fee Agreements with either a reference to his title as president of Lanmark or to the corporation itself. Thus, there is evidence supporting Debtor's claim that he executed—or at least evidence that he attempted to execute—the Fee Agreements on behalf of Lanmark.

"A corporation is a creature of legal fiction which can 'act' only through its officers, directors, and other agents." <u>Daniel Adams Assocs., Inc. v. Rimbach Publ'g, Inc.</u>, 519 A.2d at 1000. The actions of a corporate agent will bind the corporation when performed in the scope of the agent's authority. <u>Id</u>. "Where a party contracts with a corporation through a corporate agent who acts within the scope of his authority and reveals his principal, the corporate principal alone

is liable for breach of the contract." Id. at 1000-1001. With respect to adequacy of corporate execution, Pennsylvania law provides that:

> **(a)** *General rule.* — Any form of execution provided in the articles or bylaws to the contrary notwithstanding, any note, mortgage, evidence of indebtedness, contract or other document, or any assignment or endorsement thereof, executed or entered into between any business corporation and any other person, when signed by one or more officers or agents having actual or apparent authority to sign it, or by the president or vice president and secretary or assistant secretary or treasurer or assistant treasurer of the corporation, shall be held to have been properly executed for and in behalf of the corporation.

15 Pa.C.S. §1506(a).

Plaintiff recognizes that Debtor is the president of Lanmark and even acknowledged Lanmark in each of the Fee Agreements having issued them to "Mr. Lawrence W. Modena c/o LANMARK, INC." and "Lanmark, Inc./LARRY MODENA," respectively. Nonetheless, Plaintiff avers that Debtor is the party to the Fee Agreements. Significantly, however, Plaintiff fails to articulate any basis for this assertion. Plaintiff does not allege that Debtor's signature on either document fails to establish agency or even that there was no intent for the Fee Agreements to be with and/or bind Lanmark.[3] Plaintiff simply avers that Debtor is the party to the Fee Agreements.

---

[3] Further, outside of the four corners of the document, there is evidence that Plaintiff itself considered the 2001 Contingency Fee Agreement to be between itself and Lanmark. Relative to an alleged assignment of litigation proceeds—the legitimacy of which is also in dispute—Plaintiff sought assistance from Debtor in getting PNC Bank to subordinate any interest in the litigation proceeds to Plaintiff's averred interest. In correspondence to Debtor dated June 14, 2001, Plaintiff instructed that it would need a letter from PNC Bank reading, in part: "We recognize the fee agreement between Maurice A. Nernberg & Associates ("MAN") and Lanmark, Inc." See Concise Statement, Ex. S.

Given the lack of explanation for Plaintiff's claim of individual liability and considering the evidence supporting a finding of corporate agency (i.e. the signatures and references to Lanmark in the Fee Agreements and the Modena Declaration), the Court finds that a genuine issue of material fact exists as to whether Debtor, individually, is a party to the Fee Agreements.[4]

Because the Court finds that there is a question of fact as to whether Debtor is personally liable for the Fee Agreements, the Court also finds that Plaintiff has failed to meet its burden of showing that no genuine issue of material fact exists that the alleged debt resulting from the Fee Agreements is owed by Debtor in his personal capacity.

ii.    **Existence of a Debt Under 11 U.S.C. §523(a)(6)**

The Court turns next to Plaintiff's claim for non-dischargeability under 11 U.S.C. §523(a)(6). As set forth above, under §523(a)(6) a debtor will not receive a discharge for ". . . any debt—for willful and malicious injury *by the debtor* to another entity or to the property of another entity." (italics added). In this matter, Plaintiff asserts that following the execution of the 2001 Contingency Fee Agreement, Debtor, working with Kiski's counsel, converted funds due to Plaintiff. Specifically, Plaintiff avers that after a settlement agreement between Lanmark and Kiski was reached, Debtor contacted Kiski's counsel and requested that any settlement check be made directly to Debtor in an attempt to avoid

---

[4] Not to be lost in the discussion of individual versus corporate capacity is that the legal services provided by Plaintiff relative to the Kiski litigation were provided on behalf of Lanmark.

15

paying Plaintiff its legal fees.[5] Further, that Debtor accepted the check from Kiski and used the funds to pay Lanmark's expenses instead of Plaintiff. See *Motion for Summary Judgment* ¶20.

Even assuming that Plaintiff could show that there is no dispute that a conversion of funds occurred herein—which this Court does not find—by the plain terms of the statute, to succeed on its §523(a)(6) claim Plaintiff must show that there is no genuine issue of material fact that Debtor is the party which converted the funds. On review of the record and applying the principles of corporate agency discussed above, the Court finds that Plaintiff has failed to meet its burden in this respect.

In short, Plaintiff has not shown that Debtor's actions allegedly constituting the conversion were taken in an individual capacity, as opposed to in Debtor's corporate capacity as president of Lanmark. For example, the July 16th Letter sent by Debtor to Kiski's counsel, which Plaintiff points to as evidence of Debtor's collusion with Kiski, was issued on Lanmark letterhead and executed by Debtor with the title "President." Thus suggesting that Debtor was acting in his corporate capacity. Moreover, the settlement check accepted by Debtor was made payable to Lanmark, not Debtor personally, and both parties have averred that the settlement funds were used to pay Lanmark's expenses. Plaintiff fails to articulate any reason why these actions should be attributed to Debtor

---

[5] In paragraph 15 of Plaintiff's *Motion for Summary Judgment*, Plaintiff avers that in communications with Kiski's counsel, Debtor requested that the ". . . settlement check be made directly to him." However, in Plaintiff's *Brief in Support of Motion for Summary Judgment*, Plaintiff avers that Debtor requested that the check be made out directly to Lanmark. See Brief in Support 11.

16

individually and not to Lanmark. Plaintiff has not alleged that Debtor acted outside of the scope of his authority in contacting Kiski's counsel, accepting the settlement check, and/or paying Lanmark's expenses. To the contrary, at the hearing Plaintiff's counsel conceded that as the president of Lanmark, Debtor could bind Lanmark and "perhaps" direct third parties owing money to Lanmark where to send payment.

Accordingly, even if there is a debt resulting from the alleged conversion of settlement funds, Plaintiff has failed to show that there is no genuine dispute of material fact that Debtor, individually, was the party which caused the injury.

As Plaintiff has failed to show that there is no genuine dispute of material fact that Debtor owes Plaintiff a debt relative to Plaintiff's claims under either 11 U.S.C. §523(a)(2) or (a)(6), summary judgment is denied.

b.   **Individual Liability Under "Participation Theory"**

Returning to the second possible interpretation of counsel for Plaintiff's comments at the November 7, 2017 hearing referenced above (i.e. that fraud and conversion is ". . . on the individual"), the Court is mindful that under Pennsylvania law, a corporate officer may be held liable for the torts he personally commits or participates in while acting as an agent of the corporate entity. See e.g. Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978)("A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when his is an actual participant in the tort."); Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90-91 (Pa. 1983); In re Eastern Continuous Forms, Inc., 302 B.R. at 343-345; and Shay v. Flight C

Helicopter Servs., Inc., 822 A.2d 1, 17-21 (Pa.Super.Ct. 2003). This theory of liability, termed "participation theory," is distinct from liability resultant of a successful "piercing of the corporate veil," in that under "participation theory" one's liability is determined by his/her actions as opposed to one's ownership of a "less than bona fide independent entity." See Donsco, at 606. "The participation theory of liability is not a cause of action in and of itself, but rather a form of derivative liability." In re Eastern Continuous Forms, Inc., at 343.

> To impose liability on a corporate officer pursuant to the participation theory, a plaintiff must establish that the corporate officer engaged in misfeasance, *i.e.,* "the improper performance of an act." However, a corporate officer cannot be held personally liable for nonfeasance, *i.e.,* "the omission of an act which a person ought not to do."

Shay v. Flight C Helicopter Servs., Inc., 822 A.2d at 17 (internal citations omitted).

While asserting that Debtor is liable to Plaintiff in his individual capacity, Plaintiff has not overtly stated that such alleged liability is predicated on "participation theory." Instead, the basis of Plaintiff's claim of individual liability appears to be rooted in Plaintiff's averments that Debtor is a party to the Fee Agreements governing the terms of Plaintiff's representation of Lanmark. If Plaintiff is asserting some other basis of personal liability, it is not clear at this time. Plaintiff did not expressly offer a non-contractual theory of liability—such as "participation theory"—in rebuttal of Debtor's arguments in his Brief in Opposition and at the hearing on the motion that the debt to Plaintiff, if any, is owed by Lanmark and not Debtor individually. While the record of the case appears to include evidence which may support, and Plaintiff's counsel has made

18

statements which *could be* interpreted by the Court as asserting, a claim of "participation theory" liability, it is this Court's view that Plaintiff has not sufficiently developed the "participation theory" of individual liability on the record to warrant consideration at this time.

If the Court were to consider "participation theory" at this stage, the Court would shoulder the burden of parsing through the record to identify relevant facts and legal arguments for and against its application. As this Court has repeatedly stated, "it is not the job of this Court to rummage through the files to discern counsel's argument or to lay record for a litigant." See e.g. Chaney v. Grigg (In re Grigg), 568 B.R. 498, 521 (Bankr. W.D.Pa. 2017).

Accordingly, based on the analysis of the arguments and evidence presented by the parties with respect to the *Motion for Summary Judgment*, the Court finds that a genuine dispute of material fact exists as to whether Debtor owes a debt to Plaintiff. As a result, the *Motion for Summary Judgment* is denied.

In so holding, the Court strongly cautions the parties not to interpret the preceding discussion as a finding that, but for the Plaintiff's failure to expressly assert "participation theory" liability, Debtor would be adjudged liable thereunder.[6] The preceding discussion has been incorporated primarily for the purpose of explaining why this Court did not take into consideration what

---

[6] In fact, the Court observes that an issue may exist as to whether "participation theory" liability can be assessed against a corporate officer in his individual capacity absent a finding of liability against the corporate entity for the tortious conduct. See Grejda v. Medicine Shoppe Int'l, Inc. (In re Grejda), Nos. 2:06cv476, 2:06cv522, 2007 WL 2792908, at *12 (W.D.Pa. Sept. 21, 2007)(Cercone, J.)(finding that participation liability against a corporation's owner-operator is only applicable where the corporation has committed a wrong or tort in which the owner-operator participated). The Court notes that there has been no averment of an existing adjudication of liability for tortious conduct against Lanmark and Lanmark is not a party to this litigation.

19

appears to be an accepted theory of individual liability under Pennsylvania state law in its adjudication of the *Motion for Summary Judgment*. The Court makes no findings as to the viability of a "participation theory" argument in this matter. However, nothing in this opinion should be construed to prohibit an assessment of Debtor's liability under "participation theory" going forward in this litigation.

### IV.

For the reasons set forth above, the Court denies Plaintiff's *Motion for Summary Judgment*. An appropriate order shall be issued in accordance herewith.

Dated: March 29, 2018

**JEFFERY A. DELLER**
Chief United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
Robert O Lampl, Esq.
David M. Nernberg, Esq.